**COOK TRACTOR COMPANY, INC., Appellant,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. SC 87142.

Supreme Court of Missouri, En Banc.

April 11, 2006.

James K. Journey, Clinton, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, State Solicitor, James L. Spradlin, Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

Cook Tractor Co., Inc., seeks review of the Administrative Hearing Commission's ("AHC") decision finding that it owed sales and use tax, plus interest, on repair parts it purchased for its trucks and trailers from January 1, 2000, to December 31, 2002. The AHC found that Cook Tractor was not entitled to the tax exemption

under section 144.030.2(3),[1] RSMo 2000,[2] that is available to common carriers. The AHC's decision is affirmed.

## I. Jurisdiction and Standard of Review

■■■ This Court has jurisdiction to review the AHC's decision pursuant to Mo. Const. art. V, sec. 3, as the case involves construction of the state revenue laws. This Court reviews the AHC's interpretation of revenue laws *de novo*. *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 527 (Mo. banc 2003). The AHC's factual determinations are upheld if supported by law and, after reviewing the whole record, there is substantial evidence to support them. *Id.*

■■■ Exemptions from taxation are strictly construed against the taxpayer and, as such, it is the burden of the taxpayer claiming the exemption to show that it fits the statutory language exactly. *Id.* at 528. It is the Director of Revenue's burden to show a tax liability. *Id.* at 529.

## II. Background

Cook Tractor buys, sells, and transports large farm machinery and construction equipment, as well as repair parts for such equipment. Each month, except July, Cook Tractor holds a public auction where it sells consigned machinery and equipment. About 500 people attend each auction. During the auctions, Cook Tractor announces that it can be hired to transport property for purchasers. Cook Tractor has a fleet of trucks used to haul equipment, but it is selective in the type of hauling it does because its trailers are designed for hauling large equipment.

Cook Tractor hauls both equipment that customers purchase at its auctions and other equipment as requested by customers. It charges per loaded mile for hauling and sometimes per hour for loading. Most of Cook Tractor's 2002 freight income resulted from hauling consigned goods. The company had no freight income for July 2002, a month it did not hold an auction.

In the tax years at issue, Cook Tractor did not advertise itself as a hauler of goods in the newspaper or telephone book, nor did it refer to transportation for hire in its auction advertising. During this time, however, Cook Tractor employees regularly traveled throughout Missouri and to other states hauling equipment and attending auctions, using trucks with the company's name and telephone number on the side. Cook Tractor received some requests to haul goods from people who saw the company's trucks during hauls.

In 2000, 2001, and 2002, Cook Tractor purchased motor vehicle materials and parts. It did not pay sales or use tax on these purchases because it believed it was entitled to the section 144.030.2(3) tax exemption.

The Director conducted an audit of Cook Tractor for January 2000 through December 2002. She concluded that the company was not a common carrier and was, therefore, not entitled to the section 144.030.2(3) tax exemption. The Director assessed $2,742.27 in sales and use tax,

---

1. Section 144.030.2(3) provides an exemption from state and local sales and use taxes for "[m]aterials, replacement parts and equipment purchased for use directly upon, and for the repair and maintenance or manufacture of, motor vehicles, watercraft, railroad rolling stock or aircraft engaged as common carriers of persons or property[.]"

2. All further statutory references are to RSMo 2000.

plus interest, on Cook Tractor's purchases of vehicle parts and materials.[3]

Cook Tractor appealed the Director's decision to the AHC, arguing that it was operating as a common carrier and was, therefore, entitled to claim the section 144.030.2(3) exemption. The AHC found in the Director's favor after a hearing. The AHC found that Cook Tractor failed to present sufficient evidence to show that it was registered as a common carrier with all the agencies that require such registration as required by 12 CSR 10–110.300(2)(A). It also found that Cook Tractor failed to show that it held itself out to the public as engaging in the transportation of property for hire or that it operated as a common carrier.

Cook Tractor now seeks review of the AHC's decision from this Court.

### III. Was Cook Tractor a common carrier?

In relevant part, section 144.030.2(3) provides a tax exemption for materials, parts, and equipment used on motor vehicles "engaged as common carriers." Cook Tractor argues that it is entitled to the section 144.030.2(3) tax exemption because it meets numerous definitions of "common carrier." Section 144.030.2(3), however, does not define "common carrier" for purposes of claiming the exemption.

This Court's primary responsibility in statutory construction is to ascertain the intent of the General Assembly from the language used and to give effect to that intent. *Goldberg v. Admin. Hearing Comm'n of Mo.*, 609 S.W.2d 140, 144 (Mo. banc 1980). Undefined words are given their plain and ordinary meaning as found in the dictionary in order to ascertain the intent of lawmakers. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993). In construing a statute it is appropriate to take into consideration statutes involving similar or related subject matter when such statutes shed light upon the meaning of the statute being construed, even though the statutes are found in different chapters and were enacted at different times. *Citizens Elec. Corp. v. Dir. of Dept. of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989). When the legislature enacts a statute referring to terms that have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action. *Id.*

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines a "common carrier" as:

1: one that undertakes for hire the carrying of goods ... treating its whole clientele without individual preference or discrimination and being responsible for all losses and injuries [with some exceptions] 2: a public utility or public service company 3 *in federal regulatory use:* a carrier offering its services to all comers for interstate transportation by ... motor vehicle ... [.]

WEBSTER'S THIRD NEW INT'L DICTIONARY 458 (Unabridged 1993).

BLACK'S LAW DICTIONARY defines a "common carrier" as "[a] carrier that is required by law to transport passengers or freight, without refusal, if the approved fare or charge is paid." BLACK'S LAW DICTIONARY 205 (7th ed.1999).

Chapter 390, which regulates motor carriers, defines a "common carrier" as "any person which holds itself out to the general public to engage in the transportation by motor vehicle of passengers or property for hire or compensation upon the public highways and airlines engaged in intrastate commerce[.]" Sec. 390.020(6). The Director argues that Cook Tractor did not

---

**3.** The Director also assessed $472.50 in sales tax on Cook Tractor's purchase of a Ford F– 150 truck, but there is no argument about that vehicle or assessment before this Court.

operate in a way fitting this definition of "common carrier," but instead operated in conformance with the statutory definition of a "contract carrier" [4] or a "private carrier." [5]

Missouri case law has defined "common carrier" consistent with these statutory and dictionary definitions. In *State ex rel. Anderson v. Witthaus*, 340 Mo. 1004, 102 S.W.2d 99 (banc 1937), this Court noted that " 'anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier.' " *Witthaus*, 102 S.W.2d at 102 (quoting *Lloyd v. Haugh & Keenan Storage & Transfer Co.*, 223 Pa. 148, 72 A. 516, 517 (1909)). According to *Witthaus*, a common carrier advertises its business in a way to solicit the general public and " 'holds itself in readiness to engage with any one who might apply.' " *Id.* (quoting *Lloyd*, 72 A. at 517).

*Witthaus* highlights that the test of whether one is a common carrier is " 'whether he has invited the trade of the public.' " *Id.* (quoting *Klawansky v. Pub. Serv. Comm'n*, 123 Pa.Super. 375, 187 A. 248, 251 (Super.Ct.1936)). A common carrier does not discriminate in dealing with the general public, but holds himself out to carry for every one who asks him. *State ex rel. M.O. Danciger & Co. v. Pub. Serv. Comm'n*, 275 Mo. 483, 205 S.W. 36, 42 (1918).

The Director's regulation 12 CSR 10–110.300(2)(A) reflects these varying definitions and requirements for common carriers. This regulation defines a "common carrier" as:

[A]ny person that holds itself out to the public as engaging in the transportation of passengers or property for hire [and is] required by law to transport passengers or property for others without refusal if the fare or charge is paid. [And who] [t]o qualify ... must be registered as a common carrier with all agencies that require such registration. ...

This Court has previously addressed what a carrier needs to do to "hold himself out to the general public" such that he can be considered a common carrier. Holding out can be accomplished by advertising or soliciting by agents, or may result from a course of business or conduct, but essentially must be a public offering of the service that communicates that it is available to those who wish to use it. *State ex rel. Pub. Serv. Comm'n v. Logan*, 411 S.W.2d 86, 88–89 (Mo.1967) (citing *Vincent v. U.S.*, 58 A.2d 829, 831 (D.C.1948)).

The parties disagree whether Cook Tractor held itself out to the general public as a common carrier during the tax years at issue. The Director argues that Cook Tractor did not hold itself out as a common carrier merely because it announced it could haul equipment at its public auctions or because it put the company's name and contact information on its trucks.

This Court agrees with the AHC that Cook Tractor failed to present sufficient evidence that it held itself out to the general public as a common carrier during the tax years at issue. The evidence in this case supported the AHC's conclusion that

**4.** Section 390.020(7) defines a "contract carrier" as "any person under individual contracts or agreements which engage in transportation by motor vehicles of ... property for hire or compensation upon the public highways[.]"

**5.** Section 390.020(23) defines a "private carrier" as "any person engaged in the transportation of property ... by motor vehicle upon public highways, but not as a common or contract carrier by motor vehicle; and includes any person who transports property by motor vehicle where such transportation is incidental to or in furtherance of his commercial enterprises[.]"

Cook Tractor does not hold itself out to or serve the general public, but rather negotiates delivery terms with its customers who request hauling services. The evidence showed that Cook Tractor derived the majority of its business from private arrangements with its regular customers. Tellingly, Cook Tractor reported no freight income in the month it did not hold an auction.

Cook Tractor did not advertise itself as a carrier during the tax years at issue. Its announcements at its public auctions that it was available to haul goods for purchasers did not state that it offered hauling services to the general public without discrimination or at an approved rate. The mere fact that its name, phone number, and registration information appeared on its trucks did not communicate that it engaged in the transportation of property for hire.

The AHC correctly concluded that Cook Tractor was not entitled to a section 144.030.2(3) exemption for the purchases at issue because the company failed to show that it operated as a common carrier when those purchases were made.[6]

### IV. Conclusion

The AHC's decision is affirmed.[7]

All concur.

---

6. The exemption at issue in this case is distinguishable from the section 144.030.2(20) tax exemption that was at issue in *Emerson Electric Co. v. Director of Revenue*, 133 S.W.3d 31 (Mo. banc 2004). Subsection (20) provides a specific exemption for sales of aircraft to common carriers and requires the taxpayer to show that he is a common carrier, not that the aircraft is used for common carriage. *Emerson*, 133 S.W.3d at 32. Section 144.030.2(3), on the other hand, requires the taxpayer to show that the purchases claimed under the section are for vehicles engaged as common carriers.

7. Having found that Cook Tractor owes the taxes at issue, this Court need not address the parties' arguments regarding whether Cook Tractor was properly registered as a common carrier under the requirements of 12 CSR 10–110.300(2)(A).